JiBROWN, J.
A jury convicted defendant, Roy Lee Green, of forcible rape, a violation of La. R.S. 14:42.1. His motion for new trial and amended motion for new trial were denied. He was sentenced to 40 years at hard labor, two years without benefit of parole. A motion to *814 reconsider the sentence was denied. Defendant appeals his conviction and sentence alleging the evidence was insufficient to convict and the sentence was excessive. We affirm.
DISCUSSION

SUFFICIENCY OF EVIDENCE

Defendant alleges that the rape victim’s testimony was contradictory, confusing, and, therefore, not sufficient as grounds for conviction.

Standard of review

The U.S. Constitution provides that no person shall be “deprived of life, liberty, or property without due process of law.” The Fifth Amendment applies this limitation to the federal government, while the Fourteenth Amendment imposes the same restriction on the states. Implicit in the due process clause is the protection of an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Goodjoint, 30,727 (La.App.2d Cir.06/24/98), 716 So.2d 139. Thus, an accused has a constitutional right to appellate review of the evidence to determine whether the record could support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Bosley, 29,253 (La.App.2d Cir. 04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
[>The proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Goodjoint, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
• It is the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). The trier of fact senses first hand the testimony and unless the fact finder’s assessment of believability is without any rational basis it should not be disturbed by a reviewing court. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).

Elements of offense

Forcible rape is defined as vaginal or anal sexual intercourse which is deemed to be without the victim’s consent because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1. As with other types of rape, emission is not necessary and any vaginal or anal penetration, however slight, is sufficient to complete the crime. La. R.S. 14:41.

Evidence introduced at trial

When this incident occurred, the victim was a 37-year-old mentally impaired mother of three. She has a speech impediment and receives a social ^security cheek due to her condition. On the evening of December 27, 1996, she was at her friend Josephine Brown’s house drinking beer and playing dominos. She left Brown’s house on foot headed towards the Lame Duck, a nearby bar, in order to get beer and cigarettes. She took a short cut through a wooded trail that leads from Brown’s residence to the bar. When she arrived at the bar she noticed defendant standing outside.
After obtaining two beers and two packages of cigarettes, she proceeded back down the wooded trail. Defendant came up from behind and attacked her. She testified that he covered her mouth and started choking her. He then threw her to the ground, pulled her pants and panties off and penetrated her vagina with his penis.
The victim testified that she told defendant to stop and attempted to break free but was not successful. During the attack, she saw her assailant’s face in the light and recognized him to be defendant, who lived in her *815 neighborhood and was known to her as “Tou-sha.” The attack ended abruptly when defendant became startled by dogs barking and a car passing nearby.
After the attack, the victim proceeded directly to Brown’s home. Witnesses there testified that she was crying, covered in grass, her clothes were in her arms, and her face was bruised. She immediately told Josephine Brown that defendant had raped her.
The officers arrived and surmised that the victim’s eyes were bloodshot from being choked, her hair was in disarray, and she was covered with grass seeds called “beggar’s lice.” The officers later discovered similar grass seeds on defendant’s jacket and in his hair. DeSoto Parish Sheriffs Deputy Patrick Jones, Jr., testified that the grass seeds discovered on the victim, defendant, and them ^clothing were found on the wooded trail in the area where the victim said the rape occurred. The seeds came from a weed no more than knee high.
The victim was taken to the hospital and evidence was collected; however, the crime lab found no acid phosphates or spermatozoa. On direct examination, the victim stated that defendant abruptly stopped the attack because of the dogs barking and lights. On cross, she indicated that she was also in her menstrual cycle.
At trial, defendant testified and denied the rape. He claimed that he had caught a ride part of the way home from the Lame Duck with a man known only as “Doe”. After being dropped off by “Doe” at a railroad track, defendant walked along the trail to his mother’s house. Defendant alleged that while on the trail, he fell into a hole, thereby accounting for the grass seeds found in his hair that night by the police. His attorney also suggested that while brushing his pants, defendant could have transferred the seeds to his hair. While on the trail, defendant said that he encountered Robert Evans, who was on his way to visit defendant’s mother. Defendant stopped to urinate and Evans continued on without him to the house.
Robert Evans testified for the defense that after he left defendant, he went to defendant’s mother’s house where he stayed for 15 or 20 minutes. Evans stated that he did not see defendant again that night. Defendant testified that when he got to his mother’s house Evans was gone. Defendant stated that he was attacked at his mother’s residence by the victim’s enraged son and arrested by the police for the rape. Defendant, who was on parole at the time of this offense, alleged that he cut and bruised his hands and received a swollen eye prior to the rape in a Christmas night fistfight with a man he knows only as “Sonya” whom defendant “owed three or four dollars.”
bDefendant claims that the victim’s responses to various questions either conflicted with the testimony of other witnesses or made no sense. A review of her testimony does not reveal glaring inconsistencies. For example, defendant states that the victim “testified that she did not buy ‘no beer and no cigarettes’ that night, and then immediately that when she got to the Lame Duck she got two 40 ounce Buds on credit as well as cigarettes.” In fact, the victim’s testimony was as follows:
Q: Now, when you got to the Lame Duck did you buy your beer and your cigarettes?
A: No, sir, I did not buy no beer and cigarettes.
Q: What did you get at the Lame Duck?
A: I went to the Lame Duck and got two 40 ounce Buds on credit.
(Emphasis added).
Rather than being confused or contradictory, this testimony shows an understanding of the difference between buy and credit.
The victim’s relevant testimony remains that defendant came up from behind her as she walked along the trail, attacked her, threw her on the ground, choked her, took off her clothes, and raped her. Witnesses testified that she immediately reported to them that she, had been raped by defendant, whose face she saw in the light during the attack and. whom she knew previously because “he lived right up the road around the corner from us.” Her eyes were swollen and bloodshot.
The jury saw the victim, listened to her testimony, and considered the circum *816 stances. This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). Inconsistencies, if any, in the witness’s statements are one of any number of factors the jury weighs in determining whether or not to believe a witness’s trial testimony. State v. Dunn, 30,346 (La.App.2d Cir. 02/25/98), 708 So.2d 512; State v. Bender, 598 So.2d 629 (La.App. 3d Cir.1992), writ denied, 605 So.2d 1125 (La.1992).
After the state rested, defendant chose to testify and present witnesses. Evans only proved that defendant had the window of opportunity to commit the crime, and defendant’s testimony struggled to explain the evidence.
Any inconsistencies in the victim’s testimony regarding the details of the attack or the evening in question do not rise to the level to overturn the jury’s decision. Both the victim, defendant, and their friends who testified were all drinking various alcoholic beverages either at home or at the Lame Duck tavern. The jury determined that it believed the victim’s story. The facts presented were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed a forcible rape.

EXCESSIVE SENTENCE

The trial court imposed the maximum sentence of 40 years at hard labor, with two years of the sentence to be served without benefit of parole. On appeal, this 32-year-old defendant argues that his sentence is unduly harsh and excessive in proportion to the offense.
' Forcible rape, La. R.S. 14:42.1, is punishable by not less than five years at hard labor to not more than 40 years at hard labor. At least two years of the [sentence imposed shall be without benefit of probation, parole or suspension of sentence.
A sentence violates La. Const, art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Baxley, 94-2982 (La.05/22/95), 656 So.2d 973; State v. Lobato, 603 So.2d 739 (La.1992). To determine whether a particular sentence is excessive, the reviewing court must decide whether it is so disproportionate to the severity of the crime as to shock the sense of justice. State v. Marshall, 94-0461(La.09/05/95), 660 So.2d 819; State v. Baxley, supra; State v. Lobato, supra.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.04/02/97), 691 So.2d 345; State v. Henton, 28,576 (La.App.2d Cir.09/25/96), 682 So.2d 777, writ denied, 96-2590 (La.03/27/97), 692 So.2d 391.
Following defendant’s conviction, the trial court ordered a pre-sentence investigation which included information as to defendant’s personal, employment, and educational history. Defendant had been a poor student, dropping out in the ninth grade, and had a flimsy employment record. The trial court noted that defendant has a previous conviction for distribution of cocaine as well as a misdemeanor conviction for possession of marijuana. Also, defendant’s previous parole was revoked when he tested positive for illegal drugs. The trial court also cited the severity of the offense, noting that the victim was frail, retarded and suffers substantial psychological damage as a result of the crime.
[The trial court thoroughly considered and stated its reasons for imposing such a sentence. Furthermore, the trial court only ordered that the minimum of 2 years be served without benefit of parole. Under these circumstances, wé cannot say that the sentence was an abuse of the great discretion afforded the trial court.

*817
ERROR PATENT

At sentencing, the trial court informed defendant that he had “three years from today to apply for post-conviction relief.” The correct prescriptive period for seeking post-conviction relief established in La.C.Cr.P. art. 930.8 is “three years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922.” However, this defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for re-sentencing. La.C.Cr.P. arts. 921, 930.8(C); State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992). The trial court is directed to inform defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof of his receipt of such notice in the record of these proceedings. State v. Cox, supra.
CONCLUSION
Defendant’s conviction and sentence are AFFIRMED.
HIGHTOWER, J., concurs with written reasons.